**TRIPPE MOTORS, Inc., v. KENNEDY et al.**

**No. 5602.**

Court of Appeal of Louisiana. Second Circuit.

April 1, 1938.

Rehearing Denied April 29, 1938.

Writ of Certiorari and Review Denied May 30, 1938.

Theus, Grisham, Davis & Leigh, of Monroe, for appellants.

Madison, Madison & Fuller, of Bastrop, for appellee.

TALIAFERRO, Judge.

This is an action ex delicto in which plaintiff seeks to recover of defendant and his insurer damages done its Ford sedan while being operated by W. T. Smith, an employee, in a collision with defendant's 1½-ton Chevrolet truck on the Collinston-Oak Ridge graveled highway at about the hour of three P. M. on March 19, 1936. The Ford car was traveling south and the truck was going north. The collision occurred on or near a wooden bridge fifteen feet wide. The graveled surfacing of the road on either side of the bridge is several feet wider than the bridge. Plaintiff's contention is that as its car was leaving the southerly end of the bridge, defendant's truck, which Smith says had slowed down, apparently inviting him to perempt the bridge, suddenly cut to its left (west) side, thereby sideswiping the Ford and inflicting the damages sued for.

Defendants contend that the collision occurred on the bridge near to its northerly end, and that the collision was caused by Smith driving the Ford into or sideswiping the truck. The only witnesses to the accident were Smith, defendant Kennedy and his negro driver, Grover Johnson.

It is inconceivable that there could be greater variance in the testimony in support of opposing contentions than exists in this case as between the eyewitnesses, with respect to sides. Both assert freedom from negligence, and, as the cause of the accident, each blames the other. The lower court accepted Smith's version of the facts of the accident and gave judgment for plaintiff. Defendants have appealed.

We have studied the record very closely and, in connection therewith also, the photographs of the injured Ford car, and have to confess that we are not definitely satisfied as to which of the two contentions is the correct one. Whatever else may be said of the hopeless conflict in the testimony touching the immediate facts and the cause of the accident, we do say that plaintiff has failed to discharge the burden of proof on this issue.

The two vehicles were traveling, before they reached the bridge, at reasonable rates of speed. The Ford was going perhaps 35 miles per hour and the truck at a lesser speed. Each operator saw the other vehicle for a considerable distance before arriving at the bridge and it is more than probable that each tried to reach the bridge first. After the accident the

Ford was stopped 50 yards (some witnesses say 50 feet) south of the bridge. The truck came to a stop only ten feet beyond the north end thereof. These facts are persuasive to the conclusion that the Ford's speed at the time of the collision was much faster than the truck's.

Immediately after the collision, Smith and Kennedy together viewed the physical conditions on and about the bridge, and each charged the other with responsibility for the accident. It so happens that these men are of equal credibility, so far as the record discloses. Both apparently tried to describe the accident as he thought he saw it. Both cannot be right. Kennedy is protected from loss by insurance. In a companion suit, Smith is suing defendant and his insurer for a large amount of damages for personal injuries alleged to have resulted from the collision. For this reason he has a direct pecuniary interest in the outcome of the present case.

The Chevrolet truck had a stake body thereon. Its maximum width is 7 feet, 3 inches. The floor of the body extends about two inches beyond the perpendicular walls. The left hand corner of the floor first contacted and scraped the front left door of the Ford near to the handle and, as the vehicles moved forward, the corner dragged heavily across the other door, breaking the glass panel therein, and otherwise damaging the door badly. The post, to which the door hung, and attachments, was bent and damaged and mashed rearward. It received no other injury. Mr. Smith continued his journey to Monroe in the car and left it there for an estimate of the cost of necessary repairs. This car is about six feet wide. The truck was uninjured. It is certain from the nature and location of the injuries to the Ford car that its course was veered to its right, resulting in its body violently contacting the corner of the truck's body, or that the truck sideswiped it in the manner alleged by plaintiff.

We are informed by brief of counsel that the trial judge resolved the issue of fact for plaintiff on the ground that the Ford could only have been damaged as it was, by the truck sideswiping it under the circumstances asserted by plaintiff. A study of the situation there, in connection with the physical exteriors of the two vehicles, convinces us that it is entirely possible that such injuries could have been inflicted by the Ford veering a little to its right after or just prior to entering on the bridge when parallel or nearly so to the truck. If the vehicles became parallel or nearly so to each other, a slight turning to the right by the Ford, moving as rapidly as it was, could easily have thrown its body against the corner of the stake body of the truck.

Smith testified that, as he approached the bridge, he observed the truck being slowed down and pulled to its right as if to let him clear the bridge, and that as he cleared the bridge, but before he had sufficient time to get by, the truck was "suddenly swerved to the left to come on to the bridge" and as this was done, the collision occurred. He says that broken glass from his car was in the road 30 or 35 feet south of the bridge, although, according to his contention, the collision must have occurred much nearer the end of the bridge.

Grover Johnson, the truck's operator, testified that he was first on the bridge and was nearly across it when plaintiff drove his car thereon while traveling rapidly. He says that the front portion of the truck (about six feet) was off of the bridge when the collision occurred; in other words, that the front side of the body was about perpendicular to the north end of the bridge when plaintiff drove thereon and struck the truck's corner of the body; and that he saw broken glass some six feet north of the bridge. He says further that after the accident, he went back on the bridge and noticed that the truck's tracks were very close to the east rail, and that the other car's tracks disclosed that it could have gotten farther west about one foot. Kennedy testified as follows:

"A. To be frank with you, I know very little about it. We just met up there. It was one of them things happened without you realizing it. As we approached the narrow bridge, I saw the car coming over the dump but we were closer to the bridge than he was, but just as we drove off the bridge, the front end of the truck was off the bridge and the cab window was over the edge of the bridge, and I heard (indicating a sound). I knew we scraped the side of the bridge but didn't tear nothing off. Got out and saw the car."

He further testified that his truck was well on its side of the bridge; could not have gotten over any farther as he was

against the banister rail. He says glass was strewn from a few feet north of the bridge to a few feet below its other end. Most of it, he says, was near the middle of the bridge.

Louis Mitchell, a truck operator, arrived at the scene of the accident not over ten minutes after its occurrence. Smith, Kennedy and Johnson were still there. He made a close examination of the two vehicles' tracks on and near the bridge. He says that Smith's car tracks indicated he struck the truck and "kinda slided to a stop". He observed indications of the truck's tracks next to the (east) rail. He could not recall seeing any glass on the scene. From the nature and location of these tracks and "scars on the bridge", he determined that the collision occurred on the north end of the bridge.

In approaching this bridge, due to the road being several feet wider, ordinarily a part of a vehicle would extend beyond the side lines of the bridge. This would make it necessary for the operator to draw the vehicle slightly to his left in order to enter safely on the bridge. Now plaintiff says the truck was slowed down some, and we agree with this position, and pulled to its right, indicating to him that he was warranted in assuming he had right of way of the bridge; yet he further contends that in violation of that apparent intention on the part of the truck's operator, he suddenly cut the truck to the left and prevented that for which he obviously had slowed down and pulled to the right. It is not improbable that the truck driver slowed down as an act of prudence before going upon the bridge and that plaintiff observed this and misinterpreted the significance of his action. It is certain that he did not reduce his speed any prior to the accident, though the situation called for such prudent action on his part. While the record is not at all conclusive on the question, from a close study of it there arises an impression more weighty than a suspicion that there was a race to perempt the bridge. The weight of the testimonial proof, on the face of the record, favors defendants. Surely the circumstances weigh no more heavily against them than they do against plaintiff.

For the reasons herein assigned, the judgment appealed from is reversed, annulled and set aside; and plaintiff's suit is dismissed at his costs.